UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DONALD L. PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-30194-KAR |
| | ) | |
| PAUL M. TRESELER, Chairman of the | ) | |
| Massachusetts Parole Board, & | ) | |
| DANIEL BENNETT, Secretary, Executive | ) | |
| Office of Public Safety and Security | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
(Docket No. 37)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

Donald L. Perry ("Plaintiff"), a former state prisoner and parolee who is proceeding *pro se*, brings this action against Paul M. Treseler ("Defendant"), the Chairman of the Massachusetts Parole Board (Defendant), in his official and individual capacity.  In the first amended complaint, Plaintiff alleges that the Massachusetts law that imposes parole supervision fees violates his rights under the *Ex Post Facto* Clause of the United States Constitution and conflicts with Mass. Gen. Laws ch. 211E, § 3(i).  Plaintiff seeks monetary, declaratory, and injunctive relief.  Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(5) for the lack of personal jurisdiction and under rule 12(b)(6) for the failure to state a claim upon which relief can be granted (Dkt. No. 37).  The parties have consented to this court's jurisdiction (Dkt. No. 25).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons that follow, Defendant's motion is ALLOWED.

II.   FACTUAL BACKGROUND[1]

A.      Plaintiff's History

On November 7, 1983, in the Superior Court Department of the Massachusetts Trial

Court, Hampden County Division, Plaintiff pled guilty to indictment number 83-4080 charging

armed robbery, in violation of Mass. Gen. Laws ch. 265, §17 (Dkt. No. 38-1 at 2).  He was

sentenced to the Massachusetts Correctional Institution ("MCI") at Walpole for the term of his

natural life to be served from and after the state prison sentence he was then serving (Dkt. No.

38-1 at 2).  On June 26, 1984, the Appellate Division of the Superior Court amended Plaintiff's

life sentence to be served concurrently with the state prison sentence that he was currently

serving (Dkt. No. 38-1 at 3).

According to the first amended complaint, Plaintiff was released on parole in 2001 and

returned to custody in 2003 (Dkt. No. 36 at 4 ¶ 4).  Plaintiff was again released on parole in 2004

(Dkt. No. 36 at 4 ¶ 4).  In 2011, Plaintiff was returned to custody after another parole revocation

(Dkt. No. 36 at 4 ¶ 4).  He was paroled in 2014 (Dkt. No. 36 at 4 ¶ 4).  On January 26, 2016 in

the Hampden Superior Court, Plaintiff moved to withdraw his guilty plea and for a new trial on

indictment number 83-4080 (Dkt. No 38-1 at 5).  *See* Mass. R. Crim. P. 30(b).  The motion was

allowed by agreement on March 29, 2017 (Dkt. No. 38-1 at 5).  On the same date, Plaintiff pled

---

[1] Unless another source is cited, the facts are drawn from the first amended complaint (Dkt. No.
36) and the official state court records, which are referenced in the first amended complaint and
are official public records or documents central to Plaintiff's claims (Dkt. No. 38-1).  *See*
*Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993); *McIntyre v. United States*, 336 F. Supp. 2d 87,
97 n.5 (D. Mass. 2004) ("'[M]atters of public record, including court records in related or
underlying cases which have a direct relation to the matters at issue, may be looked to when
ruling on a 12(b)(6) motion to dismiss.'") (alteration in original) (quoting *In re Am. Cont'l*
*Corp./Lincoln Sav. & Loan Sec. Litig.,* 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other*
*grounds sub. nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998)).

guilty to armed robbery and was sentenced to time-served, nineteen years and one day (Dkt. No. 38-1 at 7).  In addition, the previously filed conviction on Hampden County indictment number 83-4079 was revived by agreement, *see Commonwealth v. Simmons,* 838 N.E.2d 1257, 1261 (Mass. App. Ct. 2005), and, on that conviction, Plaintiff was placed on probation for one year with specific imposed conditions (Dkt. No. 38-1 at 7).

Citing 42 U.S.C. § 1983, the first amended complaint alleges that Defendant violated the *Ex Post Facto* Clause of the United States Constitution and Massachusetts law by assessing monthly parole supervision fees in the amount of $12,220 during the thirteen years and two months Plaintiff was on parole (Dkt. No. 36 at 1 ¶ 1, at 4 ¶ 5, at 5-6 ¶ 8).  Plaintiff further claims that Defendant "coerced and intimidated" his payment of the unauthorized parole supervision fees by threatening to revoke his parole if he failed to pay the fees (Dkt. No. 36 at 4-5 ¶¶ 6, 7). According to Plaintiff, he feared retaliation if he challenged Defendant's action (Dkt. No. 36 at 5 ¶ 7).

Plaintiff seeks monetary relief in the amount of $12,200 plus court costs and interest (Dkt. No. 36 at 6).  Plaintiff also seeks to enjoin Defendant from "assessing and collecting monthly parole supervision fees," from parolees who were convicted before July 1, 2003, the effective date of 2003 Mass. Acts ch. 26, § 368 ("Section 368"), which authorized collection of monthly parole supervision fees (Dkt. No. 36 at 10-11 ¶ 9).  Similarly, Plaintiff asks the court to declare that Section 368 must be construed with Mass. Gen. Laws ch. 211E, § 3(i) to prohibit the assessment and collection of parole supervision fees from individuals who were convicted and sentenced before July 1, 2003 (Dkt. No. 36 at 6-9 ¶¶ 1-4, 6-8).

B.    Procedural History

Plaintiff filed a complaint on December 17, 2018 (Dkt. No. 1).  On February 5, 2019, Plaintiff indicated that the summons and complaint had been served on Defendant by certified mail, return receipt requested on January 29, 2019 (Dkt. Nos. 7, 8).  Defendant moved to dismiss the complaint on March 20, 2019 based on the lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), insufficient process, Fed. R. Civ. P. 12(b)(4), insufficient service of process, Fed. R. Civ. P. 12(b)(5), and the failure to state a claim, Fed. R. Civ. P. 12(b)(6) (first motion to dismiss) (Dkt. No. 15).  In response, Plaintiff moved for an enlargement of time to effect service of process and to respond to Defendant's first motion to dismiss (Dkt. No. 18).  On April 1, 2019, Plaintiff filed notice that Defendant and his counsel in the Office of the Attorney General of the Commonwealth were served by certified mail with return receipt (Dkt. No. 19).  Plaintiff's motion to extend time to respond to Defendant's first motion to dismiss was allowed on April 3, 2019 (Dkt. No. 20).  On April 18, 2019, Defendant again moved to dismiss based on insufficient service and other grounds (second motion to dismiss) (Dkt. No. 24).

After filing an opposition to Defendant's second motion to dismiss on April 22, 2019, Plaintiff moved for leave to file a first amended complaint on May 20, 2019 (Dkt. No. 26, 28). The court granted Defendant's assented-to request for an extension of time to June 19, 2019 to respond to Plaintiff's request to file an amended complaint (Dkt. Nos. 29, 30).  On July 5, 2019, in the absence of a timely opposition to Plaintiff's motion to amend, the court allowed Plaintiff's motion to expedite and entered an order granting leave to amend the complaint and denied Defendant's earlier-filed motion to dismiss without prejudice (Dkt. Nos. 31, 32, 33, 34).  The first amended complaint was deemed filed on July 5, 2019 (Dkt. No. 36).  Defendant moved to dismiss the first amended complaint on July 18, 2019 (third motion to dismiss) (Dkt. No. 37).

On August 8, 2019, Plaintiff moved to strike or to oppose Defendant's motion (Dkt. No. 39).[2] The court held a hearing on the motions (Dkt. No. 43).  Thereafter, both parties filed supplemental briefs (Dkt. Nos. 45, 46).

Defendant moves to dismiss the complaint on the grounds that Plaintiff failed to:  (1) effect proper service of the summons and the complaint; (2) state grounds upon which relief can be granted; (3) overcome the fact that Defendant is entitled to immunity for actions that he took in his official capacity; and (4) establish the court's subject matter jurisdiction over the pendant state law claims.

II.   ANALYSIS

A.   Rule 12(b)(5) Motion

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied." *Aly v. Mohegan Council–Boy Scouts of Am.*, Civil Action No. 08–40099–FDS, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009).  Where, as here, the sufficiency of process is challenged under Fed. R. Civ. P. 12(b)(5), Plaintiff "bears 'the burden of proving proper service.'" *Mukherjee v. Blake,* Civil Action No. 12-11381-FDS, 2013 WL 2299521, at *3 (D. Mass. May 24, 2013) (quoting *Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992)).  Because there is no dispute that Plaintiff sent the summons and complaint to Defendant by certified mail, return receipt requested (Dkt. No. 8, 19), Plaintiff has not met his burden to prove adequate service.

"[S]ervice of process for public employees sued in their [individual] or official capacities is governed by the rule applicable to serving individuals." *Caisse v. DuBois,* 346 F.3d 213, 216 (1st Cir. 2003) (citing *Echevarria-Gonzalez v. Gonzalez-Chapel,* 849 F.2d 24, 30 (1st Cir.

---

[2]  Plaintiff's motion to strike is addressed in a separate memorandum and order.

1988)).  "Rule 4 of the Federal Rules of Civil Procedure governs the manner in which service of

process can be effected.  In particular, Rule 4(e) provides four ways in which a plaintiff may

serve process upon individuals . . . ."  *Cichocki v. Mass. Bay Cmty. Coll.*, 174 F. Supp. 3d 572,

575–76 (D. Mass. 2016).  Plaintiff could have served process by:

> (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," here, Massachusetts, Fed. R. Civ. P. 4(e)(1);
>
> (2) "delivering a copy of the summons and of the complaint to the individual personally," Fed. R. Civ. P. 4(e)(2)(A);
>
> (3) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(B); or
>
> (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process, Fed. R. Civ. P. 4(e)(2)(C).

Plaintiff did not serve process in compliance with any of the provisions of Fed. R. Civ. P.

4(e)(2)(A), (B), or (C).  Nor did he effect service in compliance with state law, which was his

other option.  *See* Fed. R. Civ. P. 4(e)(1).  "The Massachusetts rules for service are substantially

similar to the other three options under the federal rules."  *Mukherjee,* 2013 WL 2299521, at *2.

> Service can be made upon "an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process, provided that any further notice required by such statute be given."

*Id.* (quoting Mass. R. Civ. P. 4(d)(1)).  "Massachusetts rules permit service by mail only for

service of process outside the Commonwealth."  *Id.* (citing Mass. R. Civ. P. 4(e)).  "Notably,

neither the federal rules nor the Massachusetts rules permit service upon an individual by

*certified mail* at [his] *place of employment.*"  *Id.*  Consequently, service in this case was

insufficient.

"[U]nder the federal rules, service of process has to take place within [90] days after the complaint is filed, or the court 'must dismiss the action without prejudice against that defendant or order that service be made within a specified time.'" *Id.* (quoting Fed. R. Civ. P. 4(m)). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

At the hearing before the court, Plaintiff indicated that he sought guidance from the court clerk's office concerning service of the summons and complaint and was directed to perfect service by certified mail. Although "[i]t is axiomatic that a court, which includes the clerk's office, cannot give legal advice," *Shuler v. Duke*, Case No.: 2:16-cv-00501-RDP, 2016 WL 9650978, at *3 (N.D. Ala. Aug. 4, 2016), reliance on faulty advice may constitute good cause for a *pro se* plaintiff to obtain an extension of time to perfect service. *See Mukherjee,* 2013 WL 2299521, at *4 (citing *McIsaac v. Ford,* 193 F. Supp. 2d 382, 384 (D. Mass. 2002)). Even if Plaintiff's alleged reliance on the clerk's office does not constitute good cause for the improper service, however, "the [c]ourt . . . has discretion under Rule 4(m), even absent a showing of good cause, to extend the time for service." *Aly,* 2009 WL 3299951, at *3.

Given that it is within the court's discretion to extend the time for Plaintiff to perfect service, the question becomes whether Defendant's motion to dismiss is likely to succeed. If so, permitting Plaintiff extra time to complete service would be futile. For the reasons discussed below, the court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, "the issue of whether to extend the time period for service of process is moot." *Mukherjee,* 2013 WL 2299521, at *4. *See Dzanku v. Brennan,* 270 F. Supp. 3d 376, 380 (D. Mass. 2017) (dismissing for insufficient service "because the amended complaint fails to state a claim [and] it would be futile to grant [plaintiff] an

extension of time for completing service."); *Leung v. Citizens Bank,* Civil Action No. 12-11060-FDS, 2014 WL 1343271, at \*2 (D. Mass. Apr. 2, 2014) (reaching the merits of the motion to dismiss notwithstanding improper service on defendant); *see also Caisse,* 346 F.3d at 218 (affirming denial of Rule 60(b) motion because plaintiff's substantive claims against defendants would not succeed notwithstanding the court's finding of timely service).

      B.     <u>Rule 12(b)(6) Motion</u>

          1.     Standard of Review

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at \*2 (D. Mass. Jan. 9, 2020).  In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  "In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba,* 2020 WL 107969, at \*2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[L]abels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action . . . ." are insufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief." *Ngomba,* 2020 WL 107969, at \*2 (citing *Iqbal,* 556 U.S. at 679).

"On a motion to dismiss, the court must view a *pro se* plaintiff's allegations liberally and

apply a less stringent standard to a *pro se* pleading than to a complaint drafted by counsel."

*Woods v. Covidien LP,* Civil Action No. 15–30094–MGM, 2016 WL 2733102, at \*2 (D. Mass.

May 10, 2016) (citing *Rodi v. S. New England Sch. of Law,* 389 F.3d 5, 13 (1st Cir. 2004)).

"Nonetheless, *pro se* plaintiffs must still comply with the applicable procedural and substantive

rules of law, and dismissal remains appropriate when the complaint fails to suggest an actionable

claim." *Id.*

        2.     Statutes at Issue

Two statutes are central to Plaintiff's complaint:  Mass. Gen. Laws ch. 211E, § 3(i); and

Section 368.

Section 3 of chapter 211E addresses the sentencing guidelines that were to be developed

by the Massachusetts Sentencing Commission.  *See* Mass. Gen. Laws ch. 211 E, § 3.  Subsection

(i) states:

> Any inmate sentenced to a state or county correctional facility prior to the
> effective date of any sentencing guidelines enacted into law shall be subject to the
> law, regulation and rules governing the issuance of parole and the supervision of
> parole at the time the offense was committed.

Mass. Gen. Laws ch. 211E, § 3(i).

In pertinent part, Section 368 of chapter 26 of the Massachusetts Acts and Resolves of

2003[3] says:

> The parole board shall assess upon every person granted a parole permit a
> monthly parole supervision fee of $50, hereinafter referred to as a "parole fee."[4]
> Said, [sic] person shall pay said parole fee once each month during such time as

---

[3]  The official edition of the Acts and Resolves contains the laws enacted during that year.  *See*
*Tuttle v. City of Boston,* 102 N.E. 350, 350 (Mass. 1913).

[4]  In 2006, the Legislature increased the fee to $75.  *See* 2006 Mass. Acts 1190.

said person remains on parole.  The parole board shall develop a schedule for the monthly payment of said fee for each parolee that is assessed.  The parole board may waive payment of said parole fee only if it determines that such payment would constitute an undue hardship on said person or his family due to limited income, employment status, or any other relevant factor. . . . The parole board shall establish procedures relative to the collection and waiver of such fees by regulation.  Said parole fee shall be collected by the parole board and shall be transmitted to the treasurer for deposit into the General Fund. . . .  The parole board shall also assess upon every such person granted a parole permit a monthly parolee victim services surcharge of $5, hereinafter referred to as a "parolee victim services surcharge." . . . The parole board may waive payment of said surcharge if it determines that such payment would constitute an undue hardship on said person or his family due to limited income, employment status or other relevant factor. . . .

2003 Mass. Acts 458-59.

> 3.      Section 236 does not violate the *Ex Post Facto* Clause of the United States Constitution

Plaintiff contends that because he was convicted in 1983, before parole supervision fees were enacted into law in 2003, the assessment of monthly parole supervision fees in the amount of $12,200 during the thirteen years and two months that he was on parole violated the constitutional prohibition on *ex post facto* laws.  The court disagrees.

"Article I, § 10, of the Constitution prohibits the States from passing any '*ex post facto*' law." *Cal. Dep't of Corrs. v. Morales*, 514 U.S. 499, 504 (1995).  "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28 (1981) (footnote omitted) (quoting *Cummings v. Missouri,* 4 Wall 277, 325-26 (1867)).  Thus, an *ex post facto* law is one that "'retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts.'" *Morales*, 514 U.S. at 504 (quoting *Collins v. Youngblood,* 497 U.S. 37, 43 (1990)).

10

Here, the central question is whether the probation supervision fees constituted a "punishment" for the crime of which Plaintiff was convicted in 1983. *See Taylor v. State of R.I.,* 101 F.3d 780, 782-83 (1st Cir. 1996). The view articulated in *United States v. Halper,* 490 U.S. 435 (1989) is that "a civil sanction is 'punishment' only when it serves the aims of retribution or deterrence." *Taylor,* 101 F.3d at 783 (citing *Martel v. Fridovich,* 14 F.3d 1, 3 (1st Cir. 1993)). The First Circuit has said that "the *Halper* 'punishment' test applies to 'fines, forfeitures, and other monetary penalties designed to make the sovereign whole for harm or loss that is quantifiable in monetary terms.'" *Id.* (quoting *United States v. Stoller,* 78 F.3d 710, 717 (1st Cir. 1996)).

The *Halper* test involves a two-part inquiry. *See id.* First, the court must ask whether the Legislature intended "'to punish [the] individual for past activity.'" *Id.* (quoting *DeVeau v. Braisted,* 363 U.S. 144, 160 (1960)). The second prong of the test involves an objective determination of "whether the challenged civil provision is 'so extreme . . . as to constitute punishment.'" *Id.* (quoting *Halper,* 490 U.S. at 442). For purposes of determining whether the Legislature intended a law to be punitive, "'the labels "criminal" and "civil" are not of paramount importance.'" *Id.* (quoting *Halper,* 490 U.S. at 447). Instead, the court must analyze the sanction and the purposes it is intended to serve. *See id.* "'Simply put, a civil . . . sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment[,]' that is to say retribution and deterrence." *Id.* (alterations in original) (citation omitted) (quoting *Halper,* 490 U.S. at 448).

There is nothing in Section 236 indicating that monthly parole supervision fees are meant to be punitive. In *Taylor,* the First Circuit found that the Rhode Island legislature did not impose a similar probation supervision fee for a punitive purpose. *See id.* at 783-84. As in *Taylor,* the

fee here was not imposed when Plaintiff was sentenced for the crime to which he pled guilty. *See id.* at 783. Instead, it was imposed later, when Plaintiff was granted parole. "[I]n determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Halper,* 490 U.S. at 447 n.7. The fee "provide[d] for a system that impart[ed] a level of fiscal responsibility to the parolee population, and ensure[d] that they [were] invested in maintaining the ongoing resources of [p]arole supervision, and decreasing the burden of their supervision on the community at large" (Dkt. No. 38-3 at 4). Mass. Parole Board's Parole Supervision Fees Policy, 120 par. 434.01. *See Owens v. Sebelius,* 357 F. Supp. 2d 1281, 1287 (D. Kan. 2005) (finding that a monthly parole supervision fee with a similar stated purpose was not punitive). Waivers are available to those parolees who are unable to pay. *See* 2003 Mass. Acts 458-59. In addition, "the same monthly fee is assessed against all offenders released into the community who are currently under . . . supervision, without regard to the nature or severity of their respective offenses." *Taylor,* 101 F.3d at 783.

Similarly, the fee does not meet the objective test for a criminal penalty announced in *Halper*. "[A] monetary assessment 'that cannot be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term.'" *Id.* at 784 (quoting *Halper*, 490 U.S. at 448). *See Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168 (1963) (retribution and deterrence are the "traditional aims of punishment"). An offender fee must be deemed "'punitive' if it 'bears no rational relation to the goal of compensating the [State] for its loss.'" *Taylor,* 101 F.3d at 784 (quoting *Halper*, 490 U.S. at 449). Here, because the imposition of the monthly fee is rationally related to its stated purposes of requiring fiscal responsibility from parolees who are

released into the community and reducing the financial burden on the state for their supervision,

it is not punitive in nature.  *See Mendoza-Martinez,* 372 U.S. at 168-69 (listing tests to determine

whether or not a sanction is punitive in nature); *Owens,* 357 F. Supp. 2d at 1287 ("collection of

the supervision fee is reasonably related to legitimate penological interests, i.e. holding offenders

accountable for their actions, and the fee bears a rational relation to the goal of compensating the

State of Kansas for its costs.").

Because the probation supervision fees at issue are not additional punishment for

Plaintiff's crime, they do not violate the *Ex Post Facto* Clause.  *See Taylor,* 101 F.3d at 784

(Rhode Island's probation supervision fee was civil in nature and did not violate the *Ex Post*

*Facto* Clause); *Owens,* 357 F. Supp. 2d at 1287 (Kansas' monthly parole supervision fee was not

punitive) (collecting cases); *see also Doe v. Sex Offender Registry Bd.,* 947 N.E.2d 9, 23-26

(Mass. 2011) (the Massachusetts Supreme Judicial Court found that the Massachusetts probation

supervision fees, which are similar to the parole supervision fees, did not violate the *ex post facto*

clauses of the Federal and State constitutions because they were civil assessments and were not

criminal penalties).

The result is not altered by Plaintiff's contention that his failure to pay the monthly fees

that were enacted after his conviction would have constituted a violation of the conditions of his

parole and might have resulted in revocation.  "A prisoner to whom a parole permit is granted

shall be allowed to go upon parole outside prison walls . . . upon such terms and conditions as the

parole board shall prescribe, but shall remain, while thus on parole, subject to the jurisdiction of

[the parole] board until the expiration of the term of imprisonment to which he has been

sentenced . . . ."  Mass. Gen. Laws ch. 127, § 130.  "The parole board may establish and enforce

conditions of release for any person who is granted parole."  *Commonwealth v. Cole,* 10 N.E.3d

1081, 1086 (Mass. 2014) (citing Mass. Gen. Laws ch. 27, § 5; Mass. Gen. Laws ch. 127, § 130).

Section 368, which requires the parole board to assess a parole supervision fee upon every

person who is granted parole unless the parolee qualifies for a waiver, authorizes the parole

board to make the payment of the fee a condition of release.  *See* 2003 Mass. Acts 458-59; Mass.

Parole Board's Parole Supervision Fees Policy, 120 par. 434.01.  "Where the parole board finds

a violation of a parole condition, the board 'may revoke a permit to be at liberty,' [Mass. Gen.

Laws ch. 127, § 148], and order the parolee to be returned to prison or jail."  *Cole,* 10 N.E.3d at

1086-87.  Because "as a matter of Federal constitutional law, . . . parolees have a liberty interest

in their continued release once release has been granted," a parole revocation proceeding must

comply with minimum due process requirements.  *Doe v. Mass. Parole Bd.,* 979 N.E.2d 226, 232

(Mass. App. Ct. 2012) (citing *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972)).[5]

"While revocation of parole/probation might constitute punishment, the Supreme Court

explained in *Morales* that courts must determine whether a legislative change 'produces a

sufficient risk of increasing the measure of punishment.'"  *Taylor,* 101 F.3d at 784 n.9 (quoting

*Morales,* 514 U.S. at 509).  "A legislative change which creates only a 'speculative and

attenuated possibility of producing the prohibited effect of increasing the measure of

punishment' is insufficient to raise the *ex post facto* specter.'"  *Id.* (quoting *Morales,* 514 U.S. at

509).  "[A]ny possible link between nonpayment of the offender fee and the revocation of

---

[5]  Plaintiff's allegation that Defendant's threats of parole revocation and imprisonment for failure or refusal to pay the "unauthorized" parole supervision fees constituted coercion and intimidation lacks merit (Dkt. No. 36 at 4-5 ¶¶ 6, 7).  The complaint fails to allege that Defendant personally threatened Plaintiff or that his parole was revoked for failing or refusing to pay the fees, which were authorized by law.  As noted above, the parole board was authorized to make payment of the parole supervision fees a condition of release on parole and to revoke parole for the failure to comply with conditions.  *See* Mass. Gen. Laws ch. 27, § 5; Mass. Gen. Laws ch. 127, §§ 130, 148; 2003 Mass. Acts 458-59; Mass. Parole Board's Parole Supervision Fees Policy, 120 par. 434.01.

parole/probation is too attenuated to render the offender fee violative of the *Ex Post Facto* Clause, especially since *inability to pay* constitutes grounds for waiver." *Id.* (citation omitted).

Parole supervision fees are civil in nature and are not punitive. Accordingly, their imposition on Plaintiff did not violate his rights under the *ex post facto* clause.

4.  Section 3(i) of Mass. Gen. Laws ch. 211E did not prohibit the imposition of parole supervision fees on Plaintiff.

In an argument related to his *ex post facto* claim, Plaintiff contends that the imposition of probation supervision fees under Section 368, which was enacted in 2003, was unlawful because it violated Mass. Gen. Laws ch. 211E, § 3(i). According to Plaintiff, § 3(i) prohibited the retrospective imposition of the fees that were imposed under Section 368 because that law was enacted after he was sentenced in 1983. Although the court has discretion to decline to consider Plaintiff's pendant state law claims at this stage of the litigation due to the failure of his federal claim, *see Arias v. City of Everett,* CIVIL ACTION NO. 19-10537-JGD, 2019 WL 6528894, at *9 n.10 (D. Mass. Dec. 4, 2019) (citing 28 U.S.C. § 1367; *Pease v. Burns,* 719 F. Supp. 2d 143, 155 (D. Mass. 2010)), to the extent the court's consideration of Plaintiff's claim is not barred, his argument fails as a matter of law. *See Camelio v. Am. Fed'n.,* 137 F.3d 666, 672 (1st Cir. 1998) ("the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage of the litigation.").

"Section 3 of c[h]. 211E focuses specifically on the responsibility of the [Massachusetts Sentencing] [C]ommission to recommend sentencing guidelines for use in the District Court, the Boston Municipal Court, and the Superior Court." *Commonwealth v. Laltaprasad,* 60 N.E. 3d 326, 329 (Mass. 2016). Subsection (i) applied in the event sentencing guidelines were enacted into law. *See id.* at 330. According to that subsection, if sentencing guidelines were enacted, the

inmates who were sentenced before the effective date of the guidelines were subject to "the law, regulation[s] and rules governing the issuance . . . and supervision of parole" that were in effect at the time they committed the offense for which they were sentenced.  Mass. Gen. Laws ch. 211E, § 3(i).  On the other hand, the inmates who were sentenced to a term of imprisonment after the sentencing guidelines were enacted into law "may be eligible for parole after serving the minimum sentence imposed, less credit for deductions for good conduct earned under [Mass. Gen. Laws ch. 127, § 129D]."  Mass. Gen. Laws ch. 211E, § 3(j).  When subsections (i) and (j) are read together, it is clear that they address parole eligibility before and after the enactment of sentencing guidelines, and are not related to the imposition of the monthly supervision fees.[6]  *See Wolfe v. Gormally,* 802 N.E.2d 64, 68 (Mass. 2004) ("The statute must be viewed 'as a whole'; it is 'not proper to confine interpretation to the one section to be construed.'") (quoting 2 A. N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (6th ed. 2000)).

Section 368 took effect on July 1, 2003 (Dkt. No. 38-3 at 3).  Plaintiff does not claim that he was assessed parole supervision fees for the time that he was on parole prior to the date of enactment of Section 368.  Therefore, the fees that were imposed while he was on parole from 2004 to 2011 and after he was placed on parole in 2014 are at issue (Dkt. No. 36 at 4 ¶ 4).[7]  Because Mass. Gen. Laws ch. 211E, § 3(i) addressed parole *eligibility* for inmates such as Plaintiff, but did not address the *imposition of parole supervision fees,* Plaintiff's claim that

---

[6] To date, the Legislature has not enacted sentencing guidelines recommended by the Massachusetts Sentencing Commission into law.  *See, e.g., Laltaprasad,* 60 N.E.3d at 326.

[7] Defendant points to the absence of the specific dates Plaintiff was on parole and the specific dates of parole supervision fee payments as an additional reason to dismiss the complaint under the standard announced in *Twombly* (Dkt. No. 38 at 10).  Because of the leniency afforded to *pro se* complaints and the insufficiency of the complaint for other reasons, the lack of specificity concerning Plaintiff's payments is inconsequential.

Section 368 violates the sentencing guidelines statute fails to state a claim upon which relief can be granted.

        5.     Plaintiff is not entitled to a refund of the parole supervision fees because he stands convicted of armed robbery.

To the extent Plaintiff claims that he is entitled to a refund because his 1983 armed robbery conviction was vacated when his motion for a new trial was allowed in 2017, he is not entitled to relief because he pled guilty to the same charge and, thus, stands convicted.

Plaintiff's claim is controlled by the Supreme Court's holding in *Nelson v. Colorado,* 137 S. Ct. 1249 (2017).

> Under the Court's holding in *Nelson, id.* at 1252, the State is obligated under the due process clause of the Fourteenth Amendment to refund monies where three elements are satisfied:  (1) the monies were "exacted from the defendant" upon conviction and as a consequence of the conviction; (2) the amounts "exacted" were actually paid by the defendant; and (3) the conviction has been "invalidated by a reviewing court and no retrial will occur."

*Commonwealth v. Martinez,* 109 N.E.3d 459, 471 (Mass. 2018) (quoting *Nelson,* 137 S. Ct. at 1252).  First, even assuming that the monthly parole supervision fees that were ordered as a condition of parole were "exacted from [Plaintiff]," were related to his 1983 conviction, and were paid by Plaintiff, *see Nelson,* 137 S. Ct. at 1252, Plaintiff fails the third prong of the test because he was convicted of the same offense upon a plea of guilty and, consequently, his conviction was not "erased" (Dkt. No. 38-1 at 7).  *Id.* at 1255.  *Compare Nelson,* 137 S. Ct. at 1253 (one defendant, who was retried and acquitted of all charges, and the other defendant, whose convictions were either reversed or vacated, were entitled to reimbursement of fees paid upon conviction); *Martinez*, 109 N.E.3d at 472 (ordering refund of probation supervision fees because defendants' convictions were invalidated and they were not retried.).  Plaintiff is not entitled to a refund under the holding of *Nelson.*

17

6.      Plaintiff's claims for relief against Defendant are barred.

Notwithstanding the other grounds for dismissal of Plaintiff's claims, his requests for monetary, declaratory, and injunctive relief are barred.

a.      Plaintiff's request for monetary relief is barred.

Plaintiff seeks damages of $12,220, the amount of parole supervision fees that he allegedly paid, plus interest and court costs (Dkt. No. 36 at 6).  Defendant claims that dismissal is required because he is entitled to Eleventh Amendment immunity and because he cannot be held liable for damages under § 1983.  Defendant has the better argument.

Plaintiff's suit, which claims a violation of his constitutional right to be free of the *ex post facto* application of Section 368, is brought in federal court pursuant to 42 U.S.C. § 1983 (Dkt. No. 36 at 1). [8]  *See Bartlett v. Mass. Parole Bd.,* Civil Action No. 13-11479-WGY, 2013 WL 3766747, at *3 n.3 (D. Mass. July 15, 2013) ("'It is well established that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983."'") (alteration in original) (quoting *Wilson v. Moreau,* 440 F. Supp. 2d 81, 92 (D.R.I. 2006)); *Crotty v. Mass. Parole Bd.,* Civil Action No. 10-40245-FDS, 2012 WL 3628904, at *2 (D. Mass. Feb. 23, 2012) (plaintiff brought a claim for a violation of the *Ex Post Facto* Clause under § 1983).

---

[8]  In pertinent part, section 1983 provides:

> Every person who, under color of any statute [or] regulation . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

First, Plaintiff's claims of *ex post facto* violations against Defendant for monetary relief are barred by the Eleventh Amendment's grant of sovereign immunity.  "[T]he state itself and 'arms' of the state receive immunity" under the Eleventh Amendment.  *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935, 939 (1st Cir. 1993).  *See Regents of the Univ. of Calif. v. Doe,* 519 U.S. 425, 429 (1997) (the Eleventh Amendment bars federal courts from hearing suits against states, state agents, and state agencies absent waiver or abrogation of sovereign immunity); *Alabama v. Pugh,* 438 U.S. 781, 781 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies.").

Further, "[Defendant], acting in his official capacity as Chairman of the Massachusetts Parole Board, is [absolutely] immune from a suit for damages under § 1983."  *Bruyette v. Patrick,* Civil Action No. 13-cv-12727, 2015 WL 5458276, at *4 (D. Mass. Sept. 16, 2015).  *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Wang v. N.H. Bd. of Registration in Med.,* 55 F.3d 698, 700 (1st Cir. 1995) (a state official acting in his official capacity cannot be sued for damages in a § 1983 action).  Parole board members who act within the scope of their official duties are deemed to perform quasi-judicial functions.  Consequently, they are viewed on a par with judges who are absolutely immune from liability for damages.  *See Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.,* 904 F.2d 772, 782 (1st Cir. 1990) (quasi-judicial immunity applies to "certain 'quasi-judicial' agency officials who, irrespective of their *title*, perform *functions* essentially similar to those of judges or prosecutors in a setting similar to those of a court."); *Bartlett,* 2013 WL 3766747, at *9 (Massachusetts Parole Board "members . . . perform[] quasi-judicial functions within the scope of their official duties and thus are treated

19

like judges under the doctrine of absolute immunity from damages.") (citing *Johnson v. R.I. Parole Bd. Members,* 815 F.2d 5, 8 (1st Cir. 1987) (per curiam)).  Because the harm allegedly caused by Defendant stems from his performance of quasi-judicial functions as the Chairman of the Parole Board, he is entitled to absolute immunity from liability for damages. [9]

Similarly, to the extent Plaintiff alleges that he is entitled to monetary damages because Defendant violated Massachusetts state law, his claim is barred under the doctrine of sovereign immunity that is embodied in the Eleventh Amendment.  "[I]t is well established 'that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.'"  *Wilborn v. Walsh,* 584 F. Supp. 2d 384, 391 (D. Mass. 2008) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984)).  "'[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction.'"  *Phillips v. Conrad,* Civil Action No. 10-40085-FDS, 2011 WL 309677, at *3 n.6 (D. Mass. Feb. 18, 2011) (quoting *Pennhurst State Sch. & Hosp.,* 465 U.S. at 121).

Accordingly, dismissal is warranted because sovereign immunity bars Plaintiff from recovering the monetary damages that he seeks.

       b.      Plaintiff's request for injunctive relief is barred.

---

[9] Although Plaintiff also sues Defendant in his individual capacity, the complaint lacks support for that claim.  *See Twombly,* 550 U.S. at 555 (conclusory assertions are insufficient to state a claim under Fed. R. Civ. P. 12(b)(6)).  The allegations are limited to Defendant's acts in his official role as the Chairman of the Parole Board.  Even if the claims against Defendant as an individual were sufficiently pled, however, they would be barred because Defendant is "protected by absolute immunity."  *Bruyette,* 2015 WL 5458276, at *4 (barring claims for damages against the chairman of the Massachusetts Parole Board in his individual capacity because he was entitled to absolute immunity in the performance of his official duties) (citing *Johnson,* 815 F.2d at 6).

Plaintiff asks the court to order Defendant to enforce Mass. Gen. Laws ch. 211E, § 3(i) and to "cease and desist" from assessing parole supervision fees against parolees who were sentenced before July 1, 2003 (Dkt. No. 36 at 10-11 ¶ 9).  Even if § 3(i) applied to parole supervision fees, and it does not, injunctive relief is not available.

"The Federal Courts Improvement Act of 1996 ('FCIA') amended § 1983 to provide that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'"  *Bartlett,* 2013 WL 3766747, at * 9 (citation omitted). Because Defendant is a "'judicial officer[]'" within the meaning of that statute and the exceptions do not apply, injunctive relief is not available under § 1983.  *Id.  See Bruyette,* 2015 WL 5458276, at *5 (FCIA barred plaintiff's claims for injunctive relief against the parole board chair); *Farland v. Wall,* 91 F. Supp. 3d 74, 77 (D. Mass. 2015) ("to the extent [plaintiff] seeks injunctive relief [against the Chairman of the Massachusetts Parole Board], his Section 1983 claim is barred as long as the relief sought relates to actions taken by [the Chairman] within the scope of [his] official duties.") (citing *Crotty,* 2012 WL 3628904, at *4); *Phillips,* 2011 WL 309677, at *7 (denying request for injunctive relief against parole board performing "quasi-adjudicative functions").

Similarly, the Eleventh Amendment bars Plaintiff from seeking injunctive relief to force Defendant to comply with a state law.  *See Pennhurst State Sch. & Hosp,* 465 U.S. at 113 ("at least insofar as injunctive relief is sought, an error of law by state officers acting in their official capacities will not suffice to override the sovereign immunity of the State where the relief effectively is against it."); *Wilborn,* 584 F. Supp. 2d at 391 (in a suit against the parole board, plaintiff's claim for "'injunctive relief against state officials for violation of state law [was]

precluded by the Eleventh Amendment.'") (quoting *Diaz-Fonseca v. Puerto Rico,* 451 F. 3d 13, 43 (1st Cir. 2006)).

        c.     Plaintiff's request for declaratory relief is not warranted.

      Plaintiff asks the court to declare that Section 368 must be "construed" with Mass. Gen. Laws ch. 211E, § 3(i) to prohibit the assessment and collection of parole supervision fees from parolees convicted before July 1, 2003, and that Section 368 is punitive (Dkt. No. 36 at 6-9 ¶¶ 1-4, 6-8 2).  For the reasons previously discussed, the declaratory relief that Plaintiff requests is incorrect as a matter of law.  *See Bartlett,* 2013 WL 3766747, at *10 (denying request for declaratory relief where plaintiff failed to raise a cognizable claim of a constitutional violation under § 1983).

      Like the claim for injunctive relief, the request for declaratory relief is also barred by the Eleventh Amendment's prohibition on the federal court's power to declare that state officials are violating state laws.  *See Wilborn,* 584 F. Supp. 2d at 391 (Eleventh Amendment bars suits for declaratory judgment) (citing *Diaz-Fonseca,* 451 F.3d at 43; *Tolman v. Finneran,* 171 F. Supp. 2d 31, 38 (D. Mass. 2001)).

      In addition, "'declaratory judgment is unavailable where . . . there is no ongoing legal violation.'"  *Bruyette,* 2015 WL 5458276, at *5 (quoting *Mills v. State of Me.,* 118 F.3d 37, 55 (1st Cir. 1997)).  "'[D]eclaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.'" *Id.* (alteration in original) (quoting *Brown v. Rhode Island,* 511 F. App'x 4, 6 (1st Cir. 2013)). Declaratory relief is not available in the instant case because there is no allegation that Plaintiff remains on parole and is being assessed fees.  *See Bartlett*, 2013 WL 3766747, at *10 (denying request for declarations that related to defendants' past alleged actions because "declaratory

relief applies only to *prospective* relief, to define legal rights in connection with future conduct.").

IV.     CONCLUSION

For the above-stated reasons, Defendant's motion to dismiss (Dkt. No. 37) is ALLOWED.

It is so ordered.

Date:  April 15, 2020                                  /s/ Katherine A. Robertson____
                                                       KATHERINE A. ROBERTSON
                                                       United States Magistrate Judge

23